ANNA BELLE SLICER *v.* CLYDE H. WILSON ᴇᴛ ᴀʟ.
[No. 18, October Term, 1929.]

*Decided November 21st, 1929.*

The cause was argued before Bond, C. J., Pattison, Urner, Adkins, Offutt, Digges, Parke, and Sloan, JJ.

*William H. Lawrence* and *Eldridge Hood Young,* with whom were *Young, Crothers & Settle* on the brief, for the appellant.

*W. Carroll Hunter,* for the appellees.

Adkins, J., delivered the opinion of the Court.

The bill of complaint in this case was filed by Anna Belle Slicer, appellant, against the appellees, on July 8th, 1928. It alleges that plaintiff is the owner of a parcel of land on the Old Court Road, in Pikesville, Baltimore County; that she is and was on October 19th, 1926, far advanced in age, and has lost much of the mental alertness and powers of

observation usually possessed by younger persons, and lacking also in experience and knowledge relating to business in general and real estate dealings in particular, while the defendants, Frederick D. Carozza and Clyde H. Wilson, are astute business men, well versed in all the intricacies connected with the conveyancing, mortgaging, and financing of real estate, and that said Carozza and Wilson were, and are, the principal officers and stockholders of the defendant, Frederick D. Carozza, Inc.; that on or about October 19th, 1926, the defendants approached the plaintiff with the offer to assist her to derive an income from her land by allowing them to build houses on her land and sell them, while she would establish ground rents on the individual lots upon which the houses should stand, and, making her believe that she was engaging in such an arrangement, made her sign some papers which the defendants now claim are a contract between the plaintiff and the defendant corporation, and a mortgage; that, by the contract, said defendant corporation is purported to have agreed to build six houses for the plaintiff upon the land of the plaintiff, and she is purported to have agreed to pay therefor the amount of $4,050 per house, making a total of $24,300, the payments to be made each month as the building progressed, subject to the inspection of the defendant, Clyde H. Wilson (who plaintiff never knew was a principal officer and stockholder of said defendant corporation), and the payments were to be made to said Carozza corporation by Carozza individually, who was carrying the purported mortgage; that said mortgage sets forth that Carozza is the mortgagee, and recites that plaintiff is indebted to him in the amount of $25,900, having received $1,650 in cash and the balance of $24,300 to be advanced as the work on said houses progressed; that plaintiff never intended nor knew that she was signing papers of this nature, but was led to believe that she was merely giving the defendants permission to build the houses on her land to be sold by them, in consideration for which she was to benefit by placing ground rents on the individual lots; that her signatures

(if they are really the papers which she signed) were obtained by the fraud, circumvention and misrepresentation of the defendants, and the transaction was the result of collusion on their part; that even if the said mortgage and contract were otherwise valid, the defendants were guilty of fraud in making the payments provided by the contract to depend upon the inspection of the construction work by the said Clyde H. Wilson, who, without the knowledge of the plaintiff, was a principal officer and stockholder of said Carozza corporation, and in collusion with the other defendants; that the price of $4,050 per house is exorbitant and excessive, and plaintiff never received the sum of $1,650 as recited in the mortgage; that the consideration for the mortgage is therefore inadequate; that said Carozza has assigned the said mortgage to the defendant Wilson for the purpose of foreclosure, and he has advertised the sale of part of said land, which sale, if permitted to take place, will cause plaintiff great damage.

The prayer of the bill is: 1. That the mortgage and contract be decreed to be null and void: 2. For an accounting; 3. For an injunction to restrain the sale under the power in the mortgage; 4. For general relief.

The court passed an order *nisi* on the bill, requiring defendants to show cause why the relief prayed should not be granted; but declined to enjoin the foreclosure sale (the bill having been filed on the day of sale), reserving the right to pass upon any sale made in the final determination of the case.

Copies of said agreement and mortgage are filed as exhibits.

The answer of defendants, filed July 16th, 1928, denies the allegations of the bill as to the aged and enfeebled condition of plaintiff and her lack of experience; and avers that she is a physically and mentally alert, cunning, and contriving woman, with extensive business experience, particularly in the acquisition and disposition of property and the construction of houses, over a long period of time; it denies

that Wilson is an officer of the defendant corporation, and avers that he is a member of the Baltimore bar, and acted in his professional capacity in the incorporation of said corporation and received at that time a single qualifying share of its capital stock; it admits that Carozza is the principal officer and stockholder of said corporation; it denies that defendants approached plaintiff at any time with the alleged proposition for the creation of ground rents, or that they made her believe she was engaging in any such arrangement, or that they made her sign any of the papers referred to in the bill; it avers that plaintiff, desiring to improve vacant land owned by her, approached the defendant Wilson and told him she would like to construct some houses on her land provided suitable financial arrangements could be made, and authorized said Wilson to negotiate for her a loan of $25,650 on the Old Court Road property owned by her, and the houses to be erected thereon, said houses to be built by Marion Nasco, with whose work, as a builder, the plaintiff was well acquainted, and to be constructed like the houses at Westport, Baltimore City, theretofore built by said Nasco; that plaintiff authorized said Wilson to pledge as further security for said loan certain other property of plaintiff known as the Mill property; that pursuant thereto the said Wilson obtained for the plaintiff from the defendant Carozza, on or about the 19th day of October, 1926, a mortgage construction loan of $25,950, $1,650 of which was advanced to plaintiff at the time of the execution of said mortgage and used by her to pay charges incident to the obtention and consummation of said loan, and the balance of $24,300 to be advanced in instalments as the work of building said six houses should progress; that on October 19th, 1926, a mortgage was executed by plaintiff to said Carozza to secure said loan, and on the same day the plaintiff entered into a written agreement with the defendant Frederick D. Carozza, Incorporated, of which all the stock was owned by Carozza, for the construction of said six houses, at and for the price of $4,050 for each house; that the said corporation entered

upon the performance of its said agreement, and while the work was going on plaintiff made frequent inspections of all the work being done, and, upon the completion of the construction, and the performance by the defendant corporation of its obligations under said agreement, the houses were turned over to the plaintiff, who accepted same as fully satisfactory; that the defendant corporation received from the defendant Carozza, the mortgagee, the sum of $24,300 for the work done by it under said contract; it denies that plaintiff never intended or knew that she was signing said mortgage and agreement, or that she was led to believe that she was merely giving the defendants permission to build the houses on her land to be sold by said defendants, in consideration of which she was to benefit by placing ground rents on the lots, and also denies that the said construction contract and mortgage, or any other papers or arrangements with the plaintiff, were obtained by the defendants or any of them by fraud, circumvention, and misrepresentation practiced by the defendants, or any of them, upon the plaintiff, and that any transaction between the plaintiff and these defendants was the result of collusion; it further avers that the defendant corporation, in order to satisfy the plaintiff, arranged that the said Nasco should have a part in the management of the construction of said houses; that the defendant Wilson, whom the plaintiff knew represented the other defendants in this case, was constituted by said construction agreement inspector of the work of construction at the special request of the plaintiff, and that, pursuant to his duties as inspector, the said Wilson attended to the distribution of all money to be advanced under said construction contract and mortgage construction loan, and saw that the entire sum of money mentioned therein was paid over in accordance with the terms thereof; it denies that any of the defendants was guilty of fraud in the matter of inspection by said Wilson, or that there was any collusion in this respect; it further denies that the price of $4,050 per house is exorbitant and excessive, or that plaintiff never received the

sum of $1,650 as recited in said mortgage; or that the consideration of said mortgage is inadequate.

Testimony was taken in open court and the learned chancellor dismissed the bill of complaint; hence this appeal.

We fully concur with the ruling of the learned chancellor, and find it unnecessary to add much to the reasons given by him.

It would be sufficient to say that the weight of the testimony does not support the allegations of her bill, but does in our opinion support the material averments and denials of the answer. It is unnecessary therefore to consider whether there was a confidential relation established between plaintiff and the defendant Wilson.

Plaintiff's whole case, practically, is based on her contention that she, by an impatient gesture and the expression "go on, I don't care," made to Nasco to get rid of him (when she says he was pleading to be allowed to build on her lots), authorized him to construct, and that he, with money furnished by the defendant Carozza, did construct six houses, of which, according to disinterested and undisputed testimony, the actual cost of building was over $3,600 each; that this was all done, including the financing by Carozza, on plaintiff's lots, and while the title was still in her, without a word in writing to protect the builder or his alleged financial backer, and that she signed no papers until the houses were under roof. This story would strain credulity even if uncontradicted. According to plaintiff's testimony, she had not even an oral understanding with Carozza, the man who was financing the operation, and he had no commitment by which she could be bound. Her testimony has no corroboration except by a Mrs. Duncan, and only as to the alleged pleading of Nasco and his dismissal by plaintiff, when "she threw up her hands and said 'Oh, well, go on, go on'." And there is a material conflict between this witness and plaintiff as to what occurred on that occasion. Nasco denies the whole incident, and says he never saw Mrs. Duncan. The documents themselves (mortgage and construction agreement)

bearing date of October 19th, 1926, were offered in evidence. The mortgage, according to the clerk's certificate, was recorded on October 28th, 1926, about the time the work was begun. Several witnesses, including the attesting witness (and the notary as to the mortgage), testified that they saw plaintiff execute these papers and that the writings appearing above her signatures were there at the time of the execution of the papers; and Wilson and Carozza testify that the contents of both papers were known and agreed to by plaintiff. While they were interested witnesses, their testimony is consistent with the subsequent conduct of plaintiff, while her testimony is glaringly inconsistent with such conduct. If the documents are genuine, as they seem to be, the whole fabric of plaintiff's case is destroyed.

But plaintiff claims that she was at least entitled to an accounting; that defendants only account for the disbursement of $22,155.63, in addition to $1,200 which was paid to the mortgagee as a bonus. These are the amounts shown to have been actually paid out for work and material, the remaining $2,594.37 representing profits of the defendant corporation, which was owned entirely by Carozza. According to the theory of defendants, the mortgagee, for the purposes of this case, as to the $24,300 future advances secured, is in the same position as he would have been if the mortgage had been made direct to the defendant corporation (which he owned) to secure the amount agreed to be paid for the six houses; and the only question is, were the houses constructed in accordance with the provisions of the contract? We think this is the correct view. We are satisfied, however, that the $1,200 cash payment made to plaintiff at the time of the execution of the mortgage was returned to the mortgagee as a bonus, and was usurious. But that did not require an accounting. It can be taken care of in the audit. *Kirsner v. Sun Mortgage Co.,* 154 Md. 682; *Levin v. Sun Mortgage Co.,* 156 Md. 208.

*Decree affirmed, with costs to appellees.*